UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMMAD FARSHCHIN,<br>Plaintiff,<br>v.<br>PAMELA BONDI, et al.,<br>Defendants. | Case No. 25-cv-07146-JCS<br><br>**ORDER RE JOINT DISCOVERY LETTER**<br><br>Re: Dkt. No. 42 |

## I. INTRODUCTION

The parties seek the Court's assistance in connection with a discovery dispute, namely, whether Defendants are required to amend the Certified Administrative Record ("CAR") to include in it all records of the U.S. Department of State ("DOS") relating to Plaintiff's visa application or at a minimum, (1) Plaintiff's Form DS-160, Online Nonimmigrant Visa Application ("DS-160"), and (2) the NIV Applicant Detail, including the consular case notes and entries in the Consular Consolidated Database ("CCD") system. In response to Plaintiff's request for these records, Defendants' counsel initially informed Plaintiff's counsel that USCIS was "working with DOS to get these documents together for production[,]" adding: "We apologies [sic], they aren't sure why they weren't originally included in the CAR." Dkt. no. 42-1 (July 15, 2026 email from Defendants' counsel to Plaintiff's counsel). Subsequently, however, Defendants have taken the position that USCIS is not required to include DOS records in the CAR. The parties have engaged in extensive meet-and-confer efforts but have been unable to resolve the dispute. Therefore, they have filed a joint discovery letter ("Joint Letter") under the procedures set forth in the Court's standing order concerning discovery disputes.

## II. CONTENTIONS OF THE PARTIES

### A. Plaintiff's Position

Plaintiff contends the DOS records relating to his visa application should be included in the CAR because an applicant for naturalization must establish that he or she was lawfully admitted to the United States for permanent residence. 8 U.S.C. §§ 1429, 1445(b); 8 C.F.R. § 316.2(a)(2). Thus, according to Plaintiff, "[t]o determine lawful admission, USCIS is required to investigate each applicant, and that investigation must include, at a minimum, a review of all pertinent records." Joint Letter at 2 (citing 8 U.S.C. §§ 1446(a); 8 C.F.R. § 335.1). Furthermore, "[o]fficers may . . . corroborate information by reviewing USCIS and other government files, systems, and databases." *Id.* Therefore, Plaintiff contends, "[a]n applicant's entry and admission records are necessarily among the records pertinent to whether LPR status was lawfully obtained, and USCIS therefore considered them, directly, or indirectly, in adjudicating Plaintiff's naturalization application." *Id.*

Plaintiff argues that the two "record-rule" cases Defendants cite in support of their position — *Sharks Sports & Entm't LLC v. Fed. Transit Admin.*, No. 18-cv-04060-LHK (SVK), 2020 WL 511998, *9 (N.D. Cal. Jan. 31, 2020) ("*Sharks Sport*") and *Doe I v. United States Dep't of Homeland Sec.*, No. 20-cv-07517-BLF, 2021 WL 5121169, *3 (N.D. Cal. Nov. 2, 2021) (*Doe I*") — "govern review confined to an agency's administrative record; they do not limit the evidence available in a de novo determination under 8 U.S.C. § 1447(b)." *Id.* Instead, he contends, discovery in this case is governed by the standard under Federal Rule of Civil Procedure 26(b)(1): "whether the DOS records are relevant to any party's claim or defense and proportional to the needs of the case." *Id.* Under that standard, the documents Plaintiff seeks should be produced, he asserts, because "the DS-160 sets forth the information on which Plaintiff's visa was issued, including his disclosures regarding military service. And the CCD notes are the consular officer's contemporaneous record of the admissibility determination, which would reflect how the officer understood Plaintiff's military service and the governing law." *Id.*

Furthermore, Plaintiff asserts, even under the "record-rule" standard that was applied in *Sharks Sports* and *Doe I*, these documents must be produced in order to complete the record

because "the CAR itself shows that USCIS considered these records." *Id.* In particular, Plaintiff states:

> In the Eligibility Assessment recommending denial, the USCIS officer recorded under "Systems Checked": "CCD: checked his NIV [nonimmigrant visa] (2012185 607 0001) and of his parents and wife." CAR 339. The officer relied on the contents of that nonimmigrant visa application in describing Plaintiff's military history, CAR 338, and cited CCD entries as the source of Plaintiff's education history, CAR 335. These are not "broad categories of documents" that are merely "likely to exist"—they are specific records, identified by number, that the decisionmaker looked at and relied on. That is exactly the showing Defendants' own authority finds sufficient.

*Id.*

Finally, Plaintiff rejects Defendants' assertion that to the extent he seeks discovery under Rule 26 his request fails because he did not issue a formal request for production of documents under Rule 34 of the Federal Rules of Civil Procedure. *Id.* at 3. Plaintiff notes that Defendants raised this issue for the first time in the Joint Letter, "after more than fifteen email exchanges and two video conferences about these records, and after Defendants' counsel represented that the agency was 'working with DOS to get these documents together for production.' " *Id.* (citing Exhibit A). According to Plaintiff, "Defendants never suggested a formal request was required." *Id.* He further asserts that "[t]hese records are within Defendants' 'possession, custody, or control,' Fed. R. Civ. P. 34(a)(1): the USCIS officer accessed Plaintiff's NIV record directly." *Id.* (citing CAR 339). Therefore, Plaintiff contends, "[r]equiring a thirty-day response period and a second joint letter to resolve the same dispute would serve no purpose and would only needlessly delay." *Id.* (citing Fed. R. Civ. P. 1).

**B. Defendants' Position**

Defendants do not address the merits Plaintiff's assertion that this dispute is governed by Rule 26(b)(1) rather than the record-rule standard that is set forth in *Sharks Sports* and *Doe I*, arguing only that *if* it is, Defendants have "no obligation to produce [the DOS records], because Plaintiff has not served Defendant[s] with a request for production of documents under FRCP 34." *Id.* at 3. Defendants do not dispute that the records Plaintiff seeks would meet the relevance and proportionality requirements of Rule 26(b)(1). Nor do they dispute Plaintiff's assertion that the

United States District Court
Northern District of California

records are within their "possession, custody or control." *See* Fed.R.Civ.P. 34(a)(1).

In the alternative, Defendants argue that *if* the dispute is governed by the record review standards in *Sharks Sports* and *Doe I*, then Plaintiff has not met that standard because he has "presented no evidence that the requested documents were considered" by USCIS in the adjudication of Plaintiff's naturalization petition that has occurred thus far. *Id.* at 4. Defendants also state that "[t]o the extent the CAR references [the documents Plaintiff seeks] (though Plaintiff has not provided citations to the CAR),[1] that is not enough to include them." *Id.*

## III. DISCUSSION

### A. Applicable Standard

In order to resolve the parties' dispute, the Court must first decide what standard applies to discovery where the Court is conducting a de novo review of a naturalization application pursuant to 8 U.S.C. § 1447(b). Defendants primarily rely on the standards that are applied to judicial review of agency action under the Administrative Procedures Act ("APA") whereas Plaintiff contends the broader standards under Rule 26(b)(1) apply. The Court concludes that Plaintiff is correct.

The APA authorizes a reviewing court to set aside agency action only if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Thus, "[g]enerally, judicial review of agency action is limited to review of the record on which the administrative decision was based." *Thompson v. U.S. Dep't of Lab.*, 885 F.2d 551, 555 (9th Cir. 1989). "The whole administrative record, however, is not necessarily those documents that the agency has compiled and submitted as 'the' administrative record." *Id.* (internal quotations and citations omitted). "The 'whole' administrative record . . . consists of all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position." *Id.* (internal quotations and citations omitted) (emphasis in original).

Applying these principals, the court in *Doe I,* relying in part on *Sharks Sports*, set forth the following standards for addressing a motion to complete the administrative record:

---

[1] Defendants are incorrect on this point as Plaintiff does, in fact, provide citations to the CAR in the Joint Letter.

> "An agency may not exclude information it considered on the grounds that it did not rely on that information." *Sharks Sports*, 2020 WL 511998, at *1 (citing *People ex rel. Lockyer v. U.S. Dep't of Ag.*, 2006 WL708914, at *2 (N.D. Cal. Mar. 16, 2006)). "An agency's designation and certification of the administrative record is treated like other established administrative procedures, and thus entitled to a presumption of administrative regularity." *McCrary v. Gutierrez*, 495 F. Supp. 2d 1038, 1041 (N.D. Cal. 2007) (citations omitted). Plaintiffs must present clear evidence to the contrary to rebut this presumption. Id. (citations omitted). Plaintiffs need not show bad faith or improper motive to rebut the presumption of completeness. *Sharks Sports*, 2020 WL 511998, at *1 (citing *Lockyer*, 2006 WL 708914, at *2).
>
> To meet the clear evidence standard, a plaintiff must (1) "identify reasonable, non-speculative grounds for the belief that the documents were considered by the agency and not included in the record," and (2) "identify the materials allegedly omitted from the record with sufficient specificity, as opposed to merely proffering broad categories of documents and data that are 'likely' to exist as a result of other documents that are included in the administrative record[.]" *Gill v. Dep't of Just.*, No. 14-CV-03120-RS (KAW), 2015 WL 9258075, at *5 (N.D. Cal. Dec. 18, 2015) (quoting *Winnemem Wintu Tribe v. U.S. Forest Service*, No. 2:09-CV-01072-KJM-KJN, 2014 WL 3689699, at * 10 (E.D. Cal. July 24, 2014) (citation omitted)).

*Doe I*, 2021 WL 5121169, at *2.

The scope of the Court's review of naturalization applications under 8 U.S.C. § 1447(b), in contrast to the deferential standard of the APA, is de novo. *See United States v. Hovsepian*, 359 F.3d 1144, 1162 (9th Cir. 2004) (finding that 8 U.S.C. § 1421(c) "requires the district court to undertake the same analysis that it must make under § 1447(b)," and that under both "the district court has the final word and does not defer to any of the INS's findings or conclusions."). Although the case law is scant as to what this means for discovery in Section 1447(b) cases, a number of cases addressing de novo review under Section 1421(c) shed light on the standard applicable to 1447(b) cases.[2] Those cases support the conclusion that discovery in connection with de novo judicial review under Section 1447(b) is governed by the standards set forth in the Federal Rules of Civil Procedure.

---

[2] Section 1421(c) "allows unsuccessful naturalization applicants to ask the district court to review the INS's denial of their applications." *United States v. Hovsepian*, 359 F.3d 1144, 1162 (9th Cir. 2004). The Ninth Circuit has explained that "§ 1447(b) is best viewed as a mechanism by which naturalization applicants who are impatient with INS delay may skip the agency's analysis of their application and proceed directly to the step in which the district court conducts a de novo review of the application." *Id.*

In *Gonzalez v. Napolitano*, No. CIV.A. 2:09-03426, 2010 WL 3522789 (D.N.J. Sept. 2, 2010), the court found that the plaintiff was not entitled to an order limiting the discovery the government could conduct in connection with judicial review under 8 U.S.C. § 1421(c), providing a detailed analysis of whether discovery in connection with de novo review under 8 U.S.C. § 1421(c) was governed by the Federal Rules of Civil Procedure or if, instead, the more limited review permitted under the APA circumscribed the scope of discovery. The court acknowledged that Section 1421 incorporates the procedures of the APA, providing for review "in accordance with chapter 7 of title 5[,]" and recognized that "in most contexts, judicial review of agency decision-making (under the APA or otherwise) limits the field of review to the agency's record." 2010 WL 3522789, at *2. Nonetheless, it concluded that this limitation did not apply to judicial review under Section 1421 for three reasons.

First, the court pointed to Rule 81 of the Federal Rules of Civil Procedure:

> . . . Federal Rule of Civil Procedure 81 states: "These rules apply to proceedings for admission to citizenship to the extent that the practice in those proceedings is not specified in federal statutes and has previously conformed to the practice in civil actions." Fed.R.Civ.P. 81(a)(3). It appears that application of the Federal Rules of Civil Procedure is "the norm under the current naturalization provision ... and was the norm under the prior law, under which the district courts had sole authority for determining eligibility for naturalization...." *Chan v. Gantner*, 464 F.3d 289, 296 (citing *Tutun v. United States*, 270 U.S. 568, 577 (1926) (stating that petitions for naturalization were "instituted and ... conducted ... according to the regular course of judicial procedure")). Likewise, Petitioner points to no federal statute "specif[ying]" a different result. That is some reason to apply the broad discovery rules of the Federal Rules without limitation. Because Rule 81 is express law, the federal common law of judicial review of agency decision-making would appear to give way. Cf. Rules Enabling Act, 28 U.S.C. § 2072 (mandating that in matters of "practice and procedure," the Federal Rules shall govern, and "[a]ll laws in conflict with such rules shall be of no further force or effect"); *City of Milwaukee v. Illinois*, 451 U.S. 304, 313-14, ("[F]ederal common law . . . is resorted to [only] in absence of an applicable Act of Congress.").

*Id*. at *2.

Second, the court pointed to the fact that "the scope of the Court's review [was] de novo." *Id.* at *3. The court explained:

> De novo review of agency decision-making is rare, if not unique to

> the naturalization context. Appellate authority has held that the district courts are not limited to the administrative record in this context under this standard of review. *See Aparicio v. Blakeway*, 302 F.3d 437, 445 (5th Cir.2002) ("Judicial review of naturalization denials is always available and is de novo, and is not limited to any administrative record but rather may be on facts established in and found by the district court de novo.").

*Id.*

Finally, the court reasoned that "mandated de novo review cannot be meaningfully applied if the Court is limited to the record below. De novo review requires this Court to determine the facts based on what it hears, not on what the [agency] heard and concluded in regard to contested facts." *Id.*

Other courts have agreed that de novo review means that the reviewing court is not limited to the administrative record. *See, e.g., Aparicio v. Blakeway*, 302 F.3d 437, 445 (5th Cir. 2002) ("Judicial review of naturalization denials is always available and is de novo, and is not limited to any administrative record but rather may be on facts established in and found by the district court de novo."); *Miriyeva v. U.S. Citizenship & Immigr. Servs*., 436 F. Supp. 3d 170, 184 (D.D.C. 2019), aff'd sub nom. *Miriyeva v. United States Citizenship & Immigr. Servs*., 9 F.4th 935 (D.C. Cir. 2021); *Colic v. Barr*, No. 19-CV-01511-NYW, 2019 WL 13195513, at *3 (D. Colo. Aug. 30, 2019) ("While this court notes that Plaintiff asserted that this action could be determined by the court through review of the administrative record alone . . . , it is not clear to this court that Defendants could or should be precluded from seeking further discovery in this matter given the de novo standard that applies and the questions related to the potential marriage fraud identified by the USCIS.").

The Court finds the reasoning of the cases discussed above, and particularly *Gonzalez*, to be persuasive. Furthermore, limiting discovery to materials that the agency considered and applying a presumption of regularity as to an agency's creation of the certified record is inconsistent with the de novo standard of review that applies under Section 1447(b), which "does not defer to any of the [agency's] findings or conclusions." *United States v. Hovsepian*, 359 F.3d at 1162. Therefore, the Court concludes that Plaintiff's request for his DOS records is governed by the Federal Rules of Civil Procedure rather than the more limited standards that govern

discovery in cases involving judicial review of agency action under the APA.

### B. Whether Plaintiff is Entitled to DOS Records under the Federal Rules of Civil Procedure

Under Rule 26, parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Traditionally, the relevance requirement of Rule 26(b)(1) has been construed broadly. *Fed. Trade Comm'n v. DIRECTV, Inc*., No. 15-CV-01129-HSG(MEJ), 2015 WL 8302932, at *3 (N.D. Cal. Dec. 9, 2015). In determining whether discovery is proportional to the needs of the case, courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id*.

As discussed above, Defendants did not argue in the Joint Letter that the DOS records in dispute are not discoverable under this standard even though Plaintiff directly raised this issue. Therefore, any objections on this ground are waived. *See O. L. v. City of El Monte*, No. 220CV00797RGKJDEX, 2021 WL 926105, at *3 (C.D. Cal. Jan. 11, 2021) ("Generally, a party who fails to make timely objections to a discovery request waives those objections. . . . Similarly, objections asserted in discovery responses but not raised in briefing on a discovery motion are also waived."). In any event, the Court finds that the records are both relevant and proportional to the needs of the case.

With respect to relevance, Plaintiff explains:

> Plaintiff disputes that his compulsory military service constitutes "membership" in the IRGC and further disputes that the IRGC was a terrorist organization prior to its formal designation in April 2019. The Court has described the "sole disputed issue" as "whether his mandatory military service in Iran provides a legally sufficient reason for denying his application for naturalization." Dkt. 27 at 7. The DS-160 and CCD notes are the contemporaneous record of how that service was disclosed, described, and assessed by the U.S. government when Plaintiff first sought admission. They bear directly on that issue.

> Defendants also assert that Plaintiff's adjustment of status to lawful permanent residence "was not based on" his student visa. But adjustment of status under 8 U.S.C. § 1255(a) requires that the applicant have been "inspected and admitted or paroled into the United States." Plaintiff's admission in F-1 status—on the visa DOS issued on the basis of his DS-160—is the statutory predicate for the very grant of permanent residence Defendants now contend was unlawful.

The Court finds Plaintiff's theory of relevance to be more than adequate to satisfy the requirements of Rule 26(b)(1). Furthermore, Defendants nowhere suggest that the materials Plaintiff seeks are voluminous, that the documents are not within their possession or control, or that producing them will impose a burden on Defendants. Therefore, the proportionality requirement is also met.

The only question, then, is whether Plaintiff's request for his DOS records should be denied because he did not make a formal request for production under Rule 34 of the Federal Rules of Civil Procedure. Rule 34 permits parties to seek production of documents "within the scope of Rule 26(b)" and sets forth specific procedures governing the content of such requests and the time and manner in which the party to which the request is directed may respond. Courts tend to deny motions to compel the production of documents where the movant failed to make a formal discovery request under Rule 34. *See James v. Wash Depot Holdings, Inc.*, 240 F.R.D. 693, 695 (S.D. Fla. 2006) (citing cases). In *Sithon Mar. Co. v. Holiday Mansion*, the court warned that "[t]o treat correspondence between counsel as formal requests for production under Rule 34 would create confusion and chaos in discovery." No. CIV. A. 96-2262-EEO, 1998 WL 182785, at *2 (D. Kan. Apr. 10, 1998). The undersigned shares this concern. Nonetheless, courts have sometimes found that the specific facts supported treating an informal request for production as sufficient under Rule 34. *See, e.g., Lindholm v. BMW of N. Am., LLC*, No. 3:15-CV-03003-RAL, 2016 WL 1643832, at *4 (D.S.D. Apr. 25, 2016) (finding that informal request for documents in email from counsel was sufficient where response from opposing counsel sought 30 days to respond under Rule 34, which could have led party seeking discovery to believe opposing party had accepted informal request, thus resulting in waiver of right to enforce formal request requirement under Rule 34); *Emps. Ins. Co. of Wausau v. Nationwide Mut. Fire Ins. Co.*, No. CV 2005-0620 (JFB) (MD), 2006 WL 1120632, at *2 (E.D.N.Y. Apr. 26, 2006) (finding that oral request for document

at deposition followed up by a letter was sufficient under Rule 34 and observing, "While some courts have refused to entertain a motion to compel in the absence of a formal request for documents, plaintiffs have not cited, nor is this Court aware of any decision by a court in the Eastern or Southern Districts of New York denying a motion to compel on the basis that the moving party did not make a formal request for production of documents. In fact, it is a commonplace practice among attorneys in these two districts to utilize less formal methods for making discovery requests and, in particular, to follow-up oral requests for documents made at a deposition with a confirming letter."); *Swope v. Nat'l Presto Indus., Inc.*, No. CIV. A. 89-2731, 1990 WL 149203, at *2 (E.D. Pa. Oct. 3, 1990) ) (finding oral request for document at deposition was sufficient under Rule 34 where it was "clear from the transcript submitted as an exhibit that the parties . . . knew what document was being requested[,] . . . that plaintiffs' counsel responded affirmatively to the request[,] [and that] Plaintiffs never thereafter, by letter, motion, or response to defendant's motion, objected to the request."); *Dixon v. Cappellini*, 88 F.R.D. 1 (M.D. Pa. 1980) (finding oral request for documents at deposition, followed by an exchange of letters regarding the request between counsel satisfied Rule 34 in "spirit," although the procedure did not, because the request described the documents "with reasonable particularity, and . . . both parties were aware which documents were involved").

In *Trask v. Olin Corp.*, the court offered the following observations regarding courts' treatment of informal requests for production of documents under Rule 34:

> The Court notes that the inconsistent case law on the degree of formality required for a Rule 34 Request for Production to be enforced through a Motion to Compel under Rule 37, likely reflects one of the fundamental rules governing discovery: discovery is within the trial court's sound discretion. *Harris v. Pa. Bd. of Prob. & Parole*, Civ. No. 3:cv–12–0674, 2013 WL 5551206, *2 (M.D.Pa. Oct. 8, 2013) (citing *Wisniewski v. Johns–Manville Corp*., 812 F.2d 81, 90 (3d Cir.1987)). The Court's review of case law involving informal Rule 34 requests also highlights that courts conduct a fact-specific analysis into the course of discovery, the exchanges between counsel, and the judicial interests in both expediting litigation and promoting fair trial. See *Dixon*, 88 F.R.D. at 2; *Swope*, 1990 WL 149203, at *2; *Employers Insurance*, 2006 WL 1120632, at *2; *Sithon*, 1998 WL 182785, at *2; *Suid*, 203 F.R.D. at 228. Additionally, the case law indicates that where parties are both aware of the documents being informally requested, courts are more likely to find that the request satisfies Rule 34. *Id*.

United States District Court
Northern District of California

298 F.R.D. 244, 260 (W.D. Pa. 2014).

Here, the Court finds that under the specific facts of this case, Plaintiff's failure to seek the disputed documents by way of a formal request for production does not preclude him from obtaining an order compelling their production. First, Plaintiff requested these documents months ago and Defendants initially appeared to agree to their production. *See Swope*, 1990 WL 149203, at *2. Furthermore, Defendants do not dispute that they never raised this objection during the parties' extensive meet and confer efforts. Second, the record reflects that Defendants have been aware of the documents Plaintiff seeks since this issue arose, many months ago, and there is no suggestion that Plaintiff's request was in any way unclear to Defendants. Finally, as discussed above, the question of whether the documents at issue are discoverable under Rule 26(b)(1) was squarely raised by Plaintiff in the joint discovery letter and Defendants did not respond, thus waiving any objection to production of those documents under Rule 26(b) that Defendants might seek to assert in response to a formal request for production under Rule 34. Under those circumstances, requiring Plaintiff to issue a formal Rule 34 request before ruling on his discovery request would elevate "form over substance[,]" *Emps. Ins. Co. of Wausau v. Nationwide Mut. Fire Ins. Co*., 2006 WL 1120632, at *2, and merely result in unnecessary delay. Therefore, the Court finds that Plaintiff's informal request for these documents is sufficient.

## IV. CONCLUSION

For the reasons stated above, Defendants are ordered to produce an amended certified administrative record ("amended CAR") that includes: (1) Plaintiff's Form DS-160, Online Nonimmigrant Visa Application; and (2) the NIV Applicant Detail, including all consular case notes and entries in the Consular Consolidated Database system related to Plaintiff's visa application. Pursuant to the parties' stipulation, dkt. no. 45, the amended CAR shall be produced within seven (7) days of the date of this Order.

**IT IS SO ORDERED.**

Dated: October 16, 2026

JOSEPH C. SPERO
United States Magistrate Judge